UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re: | Case No. 24-23470-rmb |
| Mailee Hang and Vang Tou Hang, | Chapter 7 |
| Debtors. | |

| | |
|---|---|
| Long Lee, et al., | |
| Plaintiffs, | |
| v. | Adversary No. 24-2130-rmb |
| Mailee Hang and Vang Tou Hang, | |
| Defendants. | |

**DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT
AND PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

Plaintiffs Long Lee, Miana Lee, Unlimited Wealth, LLC, David Blong, and Mee Lee (the "Lee Parties") are victims of Kay Yang, who ran a fraudulent investment scheme in Wisconsin. The Lee Parties say that Yang used some of the funds they invested with her to make below-market mortgage loans to several third parties, including to debtor-defendants Mailee Hang and Vang Tou Hang (the "Debtors"). The Lee Parties obtained an order in state court determining that the Debtors' mortgage loan from Yang's company and several other such loans were fraudulent transfers under chapter 242 of the Wisconsin Statutes. They now seek to have the resulting debt declared nondischargeble under 11 U.S.C. § 523(a)(2)(A). The parties filed cross motions for summary judgment on the nondischargeability

claim, and the Lee Parties filed a motion to amend their complaint to add two more claims for declarations related to the mortgaged property. Neither party sustained their burden on summary judgment, and material factual disputes remain. The Lee Parties also have not shown that their late amendment should be allowed because the amendment would prejudice the Debtors, and it is futile in any event.

## BACKGROUND

### Lee Parties' Investment with Kay Yang

The Lee Parties invested with a company called AK Equity Group, LLC owned by Kay Yang. Yang solicited funds from investors and asked them to wire funds to a bank account at Capital One Bank. The Lee Parties deposited a total of $1,770,000 into the Capital One account between January 25, 2019 and May 30, 2019, believing that they were investing with Yang and AK Equity. (Miana Lee Decl., ECF 25, ¶¶ 3-4.) AK Equity purported to pool and trade investor funds through various offshore brokerage accounts. (Halloin Decl. Ex. 1, ECF 24-1, at 6-8.) It also purported to engage in foreign currency exchange trading. (*Id.*)

Yang was investigated by the Wisconsin Department of Financial Institutions (WDFI) for selling unlicensed securities. On July 13, 2020, WDFI entered a Final Order by Consent to Cease and Desist, Revoking Exemptions, and Imposing Disgorgement, Restitution, and Civil Penalties. (Halloin Decl. Ex. 1, ECF 24-1.) The order required Yang and AK Equity Group to pay restitution in the amount of $16,950,776.78 to over 40 investors, including the Lee Parties. (*Id.* at 9.) Yang was criminally indicted for her conduct. *See United States v. Yang*, Case No. 2:25-cr-00097-bhl-scd-1, ECF 1 (E.D. Wis. May 20, 2025).

2

In 2021, the Lee Parties sued Yang in Wisconsin state court to enforce the restitution ordered by WDFI.  (Halloin Decl. Ex. 5, ECF 24-5.)  The state court entered judgments against Yang in the total amount of $2,443,101.94.  (*Id.* at 2.)

**Debtors' Purchase of the Property**

The Lee Parties assert that Yang used the funds they invested to, among other things, provide a "loan" to the Debtors, who are Yang's sister and brother-in-law, in connection with their purchase of residential real property located at 620 West Briarknoll Court in Saukville, Wisconsin (the "Property").  The loan was given through another Yang company called C&K Associates LLC.  On July 12, 2019, Yang transferred $250,000 from the account at Capital One containing the funds from the Lee Parties and other investors to an account in the name of C&K Associates at Associated Bank.  (Halloin Decl. Ex. 15, ECF 24-15.)  On July 26, 2019, Yang directed that $261,871.17 be wired from the C&K Associates account at Associated Bank to the title company responsible for closing the sale of the Property.  (Halloin Decl. Ex. 16, ECF 24-16, at 3.)

The Debtors' purchase of the Property closed on July 29, 2019.  The Debtors provided $1,000 in earnest money before the closing, and they needed $261,871.17 in cash to close the transaction.  (Halloin Decl. Ex. 17, ECF 24-17, at 2.)  This entire amount was provided through a loan from C&K Associates.  In exchange, the Debtors signed a promissory note and granted a mortgage on the Property to C&K Associates.  (Halloin Decl. Exs. 18, 19, Dkt. Nos. 24-18, 24-19.)  The note has a fixed interest rate of 2% and a 30-year term.  (Halloin Decl. Ex. 19, ECF 24-19, at 2.)

3

<strong>State Court Litigation</strong>

On May 24, 2022, the Lee Parties filed a complaint in the Circuit Court for Ozaukee County, Wisconsin, Case No. 2022-CV-162, against Yang, the Debtors, and several other persons that the Lee Parties allege similarly purchased properties using funds that originated from the Capital One account. (Halloin Decl. Ex. 6, ECF 24-6.) The Lee Parties alleged that the defendants were liable as transferees of avoidable transfers under chapter 242 of the Wisconsin statutes. (*Id.* ¶¶ 24-25.) They requested judgment under Wis. Stat. § 242.04 and attachment of the Property pursuant to Wis. Stat. § 242.07. (*Id.* at 11-12.)

On September 8, 2022, the state court entered an Order for Default Judgment and Judgment and Writ of Attachment determining that judgment should be entered against the Debtors and the other defendants, jointly and severally, in the total amount of $2,374,290.16. (Halloin Decl. Ex. 8, ECF 24-8.)[1] The Lee Parties did not submit evidence that the judgment was docketed pursuant to Wis. Stat. § 806.10, and a judgment against the Debtors is not listed on the state court docket. (*See* Halloin Decl. Ex. 9, ECF 24-9.)[2]

The state court's September 8, 2022 order also declared that "[e]ffective immediately, the following real property is attached by a lien in favor of [the Lee

---

[1] It appears the state court entered an amended order determining that the total debt is $2,445,564.41. A copy of an amended order was attached to a separate complaint the Lee Parties later filed against the Debtors in state court but it is not otherwise in the summary judgment record. (*See* Halloin Decl. Ex. 21 at Ex. B, ECF 24-21.)

[2] The Lee Parties allege in their complaint that "[t]he judgment has been docketed by the judgment clerk and is an enforceable judgment lien." (Compl., ECF 1, ¶ 16.) The Debtors denied this allegation. (Answer to Compl., ECF 5, ¶ 16.)

4

Parties]," and the list of attached properties includes the Property. (Halloin Decl. Ex. 8, ECF 24-8, at 5-6.) The order states, "This attachment may be filed with the appropriate Register of Deeds for each Property named above." (*Id.* at 6.) The Lee Parties did not present any evidence that they recorded the order with the Register of Deeds for Ozaukee County, Wisconsin, where the Property is located. Nor does it appear that the Lee Parties followed the requirements of chapter 811 of the Wisconsin Statutes to have a writ of attachment issued to the sheriff or to have the sheriff seize the Property.[3]

The Debtors did not appeal the state court's September 8, 2022 order in Case No. 2022-CV-162.

The Lee Parties commenced a second case in Ozaukee County Circuit Court against the Debtors and C&K Associates on January 27, 2023, Case No. 2023-CV-31. (Halloin Decl. Ex. 21, ECF 24-21.) Their complaint alleges that they have a lien on the Property pursuant to Wis. Stat. § 806.15[4] and requests execution on the Property pursuant to Wis. Stat. § 815.05(2). (*Id.* at 9.) The Lee Parties also

---

[3] Section 242.07(1)(b) of the Wisconsin Statutes provides that a creditor seeking relief under chapter 242 may obtain, among other remedies, "[a]n attachment or other provisional remedy against the asset transferred or other property of the transferee if available under chs. 810 to 813 or other applicable law." Neither the state court order nor the Lee Parties' submissions in this Court identify any applicable law other than chapter 811. Therefore, the Court has assumed that the Lee Parties were required to follow the procedures in chapter 811 of the Wisconsin Statutes in seeking to enforce the attachment ordered by the state court.

[4] A lien arises under Wis. Stat. § 806.15 only for judgments "properly entered in the judgment and lien docket." Wis. Stat. § 806.15(1). As noted above, it is unclear whether any judgment against the Debtors was actually entered in the judgment and lien docket for Ozaukee County because the Lee Parties presented no evidence indicating any judgment was docketed.

requested that title to the Property be transferred to them pursuant to Wis. Stat. § 816.08.  (*Id.*)

On June 27, 2023, the state court entered an Order for Default Judgment and Execution Defendants Mailee Hang and Vang Tou Hang and Interested Party C&K Associates, LLC.  (Halloin Decl. Ex. 24, ECF 24-24.)  The order provides that "effectively immediately, [the Lee Parties] may execute against the [Property] without any right of redemption."  (*Id.* at 4.)  It also provides that "[t]itle to the Property is transferred to the [Lee Parties], effective immediately" and that the Lee Parties "are entitled to the immediate possession of the [Property] pending further disposition, accounting, and sale."  (*Id.* at 4-5.)  The Lee Parties did not present any evidence that a writ of execution was issued to the sheriff, that they recorded the order, or that they engaged in any other procedure to have sheriff execute on or sell the Property pursuant to chapter 815 of the Wisconsin statutes.

The Debtors attempted to appeal the June 27, 2023 order entered in Case No. 2023-CV-31.  (Halloin Decl. Ex. 25, ECF 24-25.)  The Wisconsin Court of Appeals dismissed the appeal on April 2, 2024.  (Halloin Decl. Ex. 26, ECF 24-26.)

The Lee Parties separately sued C&K Associates in Ozaukee County, Wisconsin Circuit Court, Case No. 2023-CV-37.  (Halloin Decl. Ex. 10, ECF 24-10.) They say one purpose of the lawsuit was to secure the records that were supposed to be maintained for the loan from C&K Associates to the Debtors.  (Pls' Proposed Findings of Fact ("PFOF"), ECF 23, ¶¶ 39-40.)  On June 27, 2023, the state court entered a Default Judgment and Order to Compel Against Defendant C&K

Associates, LLC. (Halloin Decl. Ex. 11, ECF 24-11.) The order provides, "Any promissory notes made to C&K Associates, LLC, and mortgages received by it, are ordered assigned to the [Lee Parties], including, without limitation, any promissory notes or mortgages relating to . . ." the Property. (*Id.* at 3.) The order required all makers of any promissory notes to remit future payments to the Lee Parties. The parties do not appear to dispute that the Debtors are now required to pay the Lee Parties under the note and mortgage or that the Debtors are now in default because they have not made payments on the note and mortgage since 2022.

**Procedural History**

The Debtors filed a voluntary chapter 7 petition on June 28, 2024, Case No. 24-23470. The Court entered an Order of Discharge on February 3, 2025.

The Lee Parties timely filed this adversary proceeding on October 4, 2024. Their complaint alleges a single cause of action: they allege that the Debtors owe them a debt of $2,445,564.41, and they "request that the Court declare that the [Debtors] are not entitled to receive a discharge of their debt under 11 U.S.C. section 523(b) [sic]." (Compl., ECF 1, at 6.) The Court assumes the Lee Parties intended to refer to 11 U.S.C. § 523(a)(2)(A). (*See id.*, ¶ 25.)

The Lee Parties filed a motion for summary judgment requesting that the Court order three forms of declaratory relief. (ECF 21.) They ask the Court to declare that the debt owed by the Debtors is not dischargeable, that the Property is not part of the bankruptcy estate, and that the Debtors cannot claim a homestead exemption in the Property. (*Id.*)

The Court noted that the Lee Parties' complaint did not allege claims that would support the latter two declarations requested in their motion for summary judgment and allowed the Lee Parties to file a supplemental brief addressing the Court's authority to award the requested relief. (ECF 27.) The Lee Parties then filed a motion for leave to amend their adversary complaint. (ECF 29.) The proposed amended complaint includes, in addition to a claim seeking a declaration of nondischargeability under § 523(a)(2)(A), a claim requesting that the Court declare that the Property is not part of the bankruptcy estate and that the Debtors cannot claim a homestead exemption. (ECF 29-1 at 9-12.)

The Debtors filed their own motion for summary judgment on the nondischargeability claim, arguing that the Lee Parties cannot submit evidence sufficient to support the elements of nondischargeability. (ECF Nos. 26, 31.) The Debtors also objected to the Lee Parties' motion for leave to amend the adversary complaint. (ECF 39.)

## JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and the order of reference from the district court pursuant to 28 U.S.C. § 157(a). See 84-1 Order of Reference (E.D. Wis. July 10, 1984) (available at https://www.wieb.uscourts.gov/general-orders) (last visited March 30, 2026). Determination of the dischargeability of a debt and allowance or disallowance of exemptions are core proceedings under 28 U.S.C. § 157(b)(2)(I). In addition, the district court, and this Court by the order of reference, has "exclusive jurisdiction . . . of all of the property, wherever located, of the debtor as of the

8

commencement of such case, and of property of the estate." 11 U.S.C. § 1334(e)(1); *see also* Richard Levin & Henry J. Sommer, Collier on Bankruptcy ¶ 3.01 (16th ed. 2026) ("Likewise, the district court has exclusive jurisdiction to determine whether property is property of the estate to begin with."). To the extent resolution of the pending motions requires consideration of issues impacted by the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011), the parties have consented to this Court's final adjudication of these issues by their silence. *See* Fed. R. Bankr. P. 7008, 7012; *see also Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 683 (2015) ("Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express.").

## DISCUSSION

### I. The Lee Parties' Motion for Leave to Amend

The Lee Parties' initial adversary complaint includes a single cause of action seeking to have a debt declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). They now seek leave to amend their complaint, after the discovery deadline, to add a claim requesting two declarations: they want the Court to declare that the Property is not part of the bankruptcy estate and they want the Court to declare that the Debtors cannot claim a homestead exemption in the Property.

The Lee Parties' motion is governed by Federal Rule of Civil Procedure 15, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7015. The rule provides that leave of court is required for a party to amend its pleading at this point in the proceeding, and it directs that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

9

"Although the rule reflects a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice, or if the pleading is futile." *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002). The Lee Parties' proposed amendment would unduly prejudice the Debtors, and it is futile in any event.

### A.  Amendment Would Prejudice the Debtors.

"Prejudice to the nonmoving party caused by undue delay is a particularly important consideration when assessing a motion under Rule 15(a)(2)." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 853 (7th Cir. 2022). "[P]rejudice is more likely when an amendment comes late in the litigation and will drive the proceedings in a new direction" or "require significant discovery on new issues." *Id.*; *see also Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) ("Eleventh hour additions are bound to produce delays that burden not only the parties to the litigation but also the judicial system and other litigants.") (cleaned up). A court has broad discretion to deny a plaintiff leave to amend to add new claims near or after the deadline to complete discovery. *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009) (affirming denial of motion for leave to amend filed three days before the close of fact discovery); *Rodriguez v. City of Green Bay*, No. 20-C-1819, 2022 WL 823948, at *1 (E.D. Wis. Mar. 18, 2022) (striking amended complaint filed after the close of discovery and one day before summary judgment motions were due).

The Lee Parties' motion for leave to amend their complaint was filed after the close of discovery and after the deadline to file motions for summary judgment. At

10

all times during discovery and in preparing to file a motion for summary judgment, the Debtors faced only one claim seeking a declaration of nondischargeability with respect to the money judgment entered by the state court in Case No. 2022-CV-162. The Debtors were not put on notice that they would need to defend against a claim that they do not legally own the Property and could not claim an exemption in the Property, regardless of the dischargeability of the debt.

The Lee Parties offer no explanation for their failure to include the new claims in their original pleading.[5]  *See Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 775 (7th Cir. 1995) (affirming denial of leave to amend after close of discovery and summary judgment briefing where plaintiffs "offered no explanation whatsoever for the delay").  They say that "it has become clear during the course of this adversary proceeding that the [Debtors] are trying to use this bankruptcy proceeding to void the Ozaukee County Circuit Court's prior orders and maintain ownership of the Property."  (ECF 30 at 13.)  The Debtors asserted an ownership interest in the Property and claimed a homestead exemption in the Property in their schedules filed on the petition date, months before the adversary proceeding was filed.  (*See* Case No. 24-23470, ECF 1, at 10, 17.)  Maybe the Lee Parties thought the Debtors didn't *really* intend to claim an ownership interest and homestead exemption based on their schedules, but the Debtors' position should have been clear from their

---

[5] In their reply brief, the Lee Parties assert that they received new discovery from third parties. (ECF 43 at 21.)  The new allegations in the proposed amended complaint, to the extent they are relevant at all, relate only to the § 523(a)(2)(A) claim already pleaded.  The new claims for declarations regarding the Debtors' ownership interest in the Property and homestead exemption are based entirely on facts surrounding the state court orders entered well before the Debtors filed bankruptcy.

answer to the complaint.  (*See* ECF 5, ¶ 29.)  Yet the Lee Parties did not seek to amend their complaint until over ten months later, after the Court asked the Lee Parties to brief the issue of the Court's ability to grant the relief sought in their motion for summary judgment.

Upon disposition of the parties' cross motions for summary judgment, this case will be ready to proceed to trial.  If the Court allows the amendment, discovery may need to be reopened[6], and the parties could file another round of summary judgment motions on the added claims.[7]  The Debtors and the public have an interest in a speedy resolution of this case.  *Perrian*, 958 F.2d at 195 ("The burden to the judicial system can justify a denial of a motion to amend even if the amendment would cause no hardship at all to the opposing party" because a late amendment "defeat[s] the public's interest in speedy resolution of legal disputes.") (internal quotation marks omitted).  The Debtors will be prejudiced by the late amendment, so the Court will deny leave to amend.

### B.    The Amendment Would Be Futile.

It is appropriate to deny a plaintiff leave to amend a complaint where the amendment would be futile.  *Moore v. State of Ind.*, 999 F.2d 1125, 1128 (7th Cir.

---

[6] The Lee Parties say that *they* do not want additional discovery (*see* Pls' Combined Reply Brief, ECF 43 at 21), but the Debtors may want additional discovery regarding the scope of the Lee Parties' alleged interest in the Property before the Court were to make a binding declaration.

[7] The Lee Parties seem to suggest that the Court should permit them to amend their complaint and then grant summary judgment in their favor on the added claims without allowing the Debtors to file a responsive motion or pleading or to conduct discovery on the new claims.  The Lee Parties offer no legal authority for the Court's ability to grant immediate summary judgment in that fashion.  *See In re KJK Const. Co.*, 414 B.R. 416, 426-27 (Bankr. N.D. Ill. 2009) (noting that if a motion for summary judgment is made before an answer to the complaint is filed, courts are reluctant to grant summary judgment unless it is very clear that an answer will not raise any significant issues of fact).

1993) ("[T]he court should not allow the plaintiff to amend his complaint when to do so would be futile."). "[A]n amendment may be futile when it fails to state a valid theory of liability . . . or could not withstand a motion to dismiss." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir. 1992).

The Lee Parties' new claim in the proposed amended complaint seeks two declarations: that the Debtors cannot claim a homestead exemption in the Property and that the Property is not part of the bankruptcy estate. As an initial matter, the Court observes that the Lee Parties plead a single claim for two declarations that would give them inconsistent relief. If the Property is not part of the bankruptcy estate, then the Debtors cannot claim a homestead exemption in the Property. Exemptions are available to debtors only where property is part of the bankruptcy estate. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993) ("Before an exemption [of property] can be claimed, it must be estate property."), *abrogated on other grounds by Law v. Siegel*, 571 U.S. 415 (2014).

Regardless, even if the Lee Parties had appropriately requested the relief under two claims and alternative theories of relief, the claims would be subject to immediate dismissal.

### 1. *Declaration Regarding Homestead Exemption*

In the main bankruptcy case, the Debtors claimed a homestead exemption in the Property in the amount of $59,000 pursuant to Wis. Stat. § 815.20. Case No. 24-23470, ECF 1 at 17. Though Wisconsin law allows each debtor to claim up to $75,000 for a homestead exemption, allowing married couples like the Debtors to claim up to $150,000, it appears that the exemption claimed by the Debtors is the

difference between the balance on the mortgage to C&K Associates and the value of the Property.

Pursuant to Bankruptcy Rule 4003, "a party in interest may file an objection to a claimed exemption within 30 days after . . . the conclusion of the § 341 meeting of creditors." Fed. R. Bankr. P. 4003(b)(1).[8] The court may extend the time to file an objection, but only if the party in interest files a motion before the time to object expires. *Id.* Failure to file a written objection to a debtor's claimed exemption, or a motion to extend the deadline, is fatal to an untimely objection. *In re Kazi*, 985 F.2d 318, 322 (7th Cir. 1993). This is so even where the party in interest initially believes the property in which the exemption is claimed is not part of the bankruptcy estate. *Id.*

The chapter 7 trustee concluded the meeting of creditors on October 29, 2024 and filed a report of no distribution on October 30, 2024. Case No. 24-23470, Dkt. Nos. 23, 29. Pursuant to Bankruptcy Rule 4003(b), the deadline for the Lee Parties to object to the Debtors' claimed homestead exemption was November 29, 2024 (November 28 was Thanksgiving). The Lee Parties did not file their proposed

---

[8] The rule extends this deadline if the debtor files a supplement to the list of exemptions or an amendment to other schedules that is relevant to the exemption at issue. *See* Fed. R. Bankr. P. 4003(b)(1); *see also In re Kazi*, 985 F.2d 318, 323 (7th Cir. 1993) (agreeing that "the objection may go only to those exemptions affected by [the amended schedules]" and that "[t]he filing of an amended schedule does not reopen the time to object to the original exemptions"). The Debtors did not file any amendments to their list of exemptions or relevant supplements to their schedules that would affect the exemption they claimed in the Property.

amended complaint with the objection to the Debtors' claimed homestead exemption until September 18, 2025, well after the deadline.[9]

The Lee Parties filed their initial complaint on October 4, 2024, which was within the time to object under Bankruptcy Rule 4003(b). Civil Rule 15(c) provides that an amended pleading relates back to the date of the original complaint under certain circumstances, including when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Under this rule, if the Lee Parties' new claim, filed on September 18, 2025, relates back to the date of the original complaint filed on October 4, 2024, then the Lee Parties' claim objecting to the Debtors' homestead exemption may be timely.

The Court declines to apply Rule 15(c) to allow the proposed amended complaint to relate back to the original complaint. Such a rule would encourage abuse of the bankruptcy process by creditors. "[O]nce the 30-day period to object expires, a debtor's claimed exemption cannot be challenged regardless whether it has a basis in law." *Kazi*, 985 F.2d at 322. A creditor should not be permitted to file a timely nondischargeability action and later amend its adversary complaint to include an untimely objection to a debtor's claimed exemption. *See, e.g., Dolfi v. Dolfi (In re Dolfi)*, 605 B.R. 385, 391-94 (Bankr. W.D. Pa. 2019) (denying leave to

---

[9] It is not at all clear why the Lee Parties even want to bring this claim. Exemptions in bankruptcy take property out of the bankruptcy estate and out of reach of the chapter 7 trustee. *See* 11 U.S.C. § 522(b)(1). If the Lee Parties succeed in disallowing the homestead exemption, but the Property is still part of the bankruptcy estate, then the chapter 7 trustee could withdraw his no-asset report and seek to liquidate the non-exempt equity in the Property for the benefit of all unsecured creditors.

amend complaint to add claim based on § 523(a)(2)(A) because original complaint under §§ 523(a)(6) and (a)(15) did not put debtor on fair notice that plaintiffs would assert nondischargeability due to debtor's alleged fraud).  Moreover, it is not clear that an objection to a claim of exemption can even be brought in an adversary proceeding.  *See Cardservice Int'l, Inc. v. Inman (In re Inman)*, 260 B.R. 233, 241 (Bankr. M.D. Fla. 2000) ("Such an objection [to the debtor's exemptions in household property] should have been brought in the main case, not in this Proceeding.").

The Lee Parties' new claim objecting to the Debtors' homestead exemption is subject to immediate dismissal as untimely.  Therefore, an amendment to add this claim is futile.

In an attempt to save their new claim for a declaration as to the Debtors' homestead exemption, the Lee Parties say they are merely responding to the Debtors' invocation of the exemption as an affirmative defense to the Lee Parties' nondischargeability claim.  (*See* ECF 30 at 10 (citing ECF 5 at 5-6).)  "An affirmative defense limits or excuses a defendant's liability even if the plaintiff establishes a *prima facie* case."  *Bell v. Taylor*, 827 F.3d 699, 704-05 (7th Cir. 2016) (internal quotation marks and citation omitted).  A plaintiff does not have an affirmative claim against a defendant based on an affirmative defense, so that does not save the Lee Parties' proposed claim for a declaration denying the Debtors' homestead exemption.

To the extent the Lee Parties seek summary judgment as to an affirmative defense (as opposed to an affirmative claim for a declaration), the Court will deny that motion. In their answer to the complaint, the Debtors included an affirmative defense that the Lee Parties' "request for relief fails because the Debtor/Defendants' home is their homestead, with equity at or below $150,000 and therefore exempt and out of reach of creditors." (Answer, ECF 5, at ¶ 35.) The Lee Parties' motion for summary judgment does not specifically request that the Court grant summary judgment precluding the Debtors from raising the affirmative defense in paragraph 35 of their answer (or any other affirmative defense). (*See* ECF 22.) None of the Debtors' briefs mention an affirmative defense, either, suggesting that they did not understand the Lee Parties to be seeking summary judgment on their affirmative defense. (*See* ECF 31, 37, 45.) Therefore, the Court will deny summary judgment because the Debtors did not have sufficient notice of the Lee Parties' motion on this issue.

The Debtors are cautioned that they may raise at trial only affirmative defenses that limit or excuse their liability as to nondischargeability under § 523(a)(2)(A) if the Lee Parties establish a *prima facie* case. Under Wisconsin law, the holder of a money judgment (which the Lee Parties purport to be) may enforce that judgment through execution on a debtor's property. *See* Wis. Stat. ch. 815. Certain property is exempt from execution by a creditor, including $75,000 in a debtor's homestead. Wis. Stat. § 815.20. The Lee Parties' ability to enforce their judgment through execution on the Property does not seem to be relevant to

17

whether the debt claimed by the Lee Parties is nondischargeable under

§ 523(a)(2)(A).  The Debtors' homestead exemption may affect the property that the

Lee Parties can look to for satisfaction of their claim[10], but that is a matter separate

from whether the debt itself is nondischargeable.

### 2.      Declaration Regarding Property of the Estate

The Lee Parties next seek to have the Court declare that the Property is not

part of the bankruptcy estate.  Amendment to add this claim also is futile.

The Lee Parties first say that ownership of the Property is a "threshold legal

issue."  (ECF 30 at 6.)  Threshold to what?  The Lee Parties don't say.  Whether the

Debtors or the Lee Parties own the Property seems to have no bearing at all on

whether any underlying debt is nondischargeable under § 523(a)(2)(A).

The Lee Parties argue that a declaration that the Property is not part of the

bankruptcy estate is within the scope of relief permitted after trial pursuant to

Federal Rule of Civil Procedure 54(c), so their motion to amend does not seek any

relief different from what the Court can grant on their existing nondischargeability

claim.  (ECF 30 at 6.)  Rule 54(c), made applicable to this proceeding by Federal

Rule of Bankruptcy Procedure 7054(a), provides that a judgment, other than a

---

[10] A declaration of nondischargeability under § 523(a)(2)(A) does not affect the parties' rights with respect to any judgment lien the Lee Parties may have.  The lien survives bankruptcy unaffected to the extent it is not avoided.  *See In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015) ("a secured creditor who fails to [file a proof of claim] can still enforce its lien through a foreclosure action, even after the debtor receives a discharge"); *In re Penrod*, 50 F.3d 459, 461 (7th Cir. 1995) (noting the presumption that "liens pass through bankruptcy unaffected").  The Debtors may exercise their rights under 11 U.S.C. § 522(f) in the main case to seek avoidance of any judgment lien.  *In re Ash*, 166 B.R. 202, 204 (Bankr. D. Conn. 1994) ("A substantial number of courts considering this issue agree that a debtor's avoidance power [under § 522(f)] is not conditioned upon whether the underlying debt is dischargeable[.]") (collecting cases).  They have not filed such a motion.

default judgment, "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c).

Contrary to the Lee Parties' assertion, a declaration that the Property is not part of the bankruptcy estate is not relief that can be granted on the Lee Parties' original complaint, which pleads a single claim for a declaration of nondischargeability under § 523(a)(2)(A). Pursuant to § 523(a)(2)(A), the Court can declare that a "debt" is nondischargeable. A "debt" is "liability on a claim." 11 U.S.C. § 101(12). A "claim" is a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5). Thus, the relief that the Court can grant on the Lee Parties' claim under § 523(a)(2)(A) is limited to a declaration that their right to payment of money obtained by fraud continues notwithstanding the Debtors' discharge. The Lee Parties' new claim related to what is and is not property of the bankruptcy estate is not relief that the Court could grant under § 523(a)(2)(A).

The Lee Parties also argue that the *Rooker-Feldman* doctrine somehow applies to allow their affirmative claim for a declaration that the Property is not part of the bankruptcy estate. (ECF 30 at 7.) The *Rooker-Feldman* doctrine prevents the federal courts from exercising subject matter jurisdiction under certain circumstances. Under the doctrine, federal courts should disclaim jurisdiction only in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Gilbank v. Wood Cnty. Dep't*

*of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Lee Parties do not explain how a doctrine limiting subject matter jurisdiction applies to allow their affirmative claim for declaratory relief. The *Rooker-Feldman* doctrine does not prevent state court losers from seeking bankruptcy relief, which is the only relief the Debtors have sought. *Cf. Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 871 (9th Cir. 2005) ("The *Rooker–Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case.").

The Lee Parties also argue that their claim for declaratory relief is appropriate because, according to the Lee Parties, the Debtors misrepresented their interest in the Property on their bankruptcy schedules. They cite *In re Stamat*, 395 B.R. 59, 72 (Bankr. N.D. Ill. 2008), a case in which a debtor's discharge was denied under § 727(a)(4) based in part on the debtor's inaccurate schedules. (Pls' Combined Supplemental Brief, ECF 30, at 8.) Here, the Debtors' schedules indicate that they own the Property, which according to the Lee Parties is not true. Therefore, say the Lee Parties, ownership of the Property is relevant to their nondischargeability claim. But the *Stamat* case was one under § 727(a), which allows denial of a debtor's discharge for certain conduct. The Debtors have already received a discharge; this adversary proceeding is about whether a single debt is excepted from the discharge under § 523(a)(2)(A). The information included on the schedules *might* be relevant to establishing the elements of a § 523(a)(2)(A) claim,

20

but that does not allow the Lee Parties to raise an entirely separate claim for declaratory relief.

On the merits, the Lee Parties' proposed claim for a declaration that the Property is part of the bankruptcy estate is subject to immediate dismissal because the proposed amended complaint does not state a claim. Pursuant to § 541(a), a bankruptcy estate is created upon the filing of a bankruptcy petition that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). The Lee Parties are right that the bankruptcy estate is limited to whatever rights a debtor had at the beginning of the case—no more, no less. (ECF 30, at 8-9 (quoting *In re Jones*, 768 F.2d 923, 927 (7th Cir. 1985).)

So what interest did the Debtors have in the Property on the petition date? At that point, the state court had entered an order on September 8, 2022 in Case No. 2022-CV-162 ordering that the Lee Parties were "entitled to a Writ of Attachment" for the Property and that the Property was "attached by a lien" in favor of the Lee Parties that "may be filed with the appropriate Register of Deeds." (Prop. Am. Compl., ECF 29-1, at 20-21.)[11] The Lee Parties do not allege that the state court ever actually issued a writ of attachment to the sheriff consistent with chapter 811 of the Wisconsin Statutes, and no such writ was attached to the proposed amended complaint or included with the summary judgment record. *See* Wis. Stat. § 811.02 (a writ of attachment "shall be directed to the sheriff of some

---

[11] The amended complaint includes an allegation that the September 8 order was amended on December 8, 2022. (ECF 29-1, ¶ 16; *id.* at 23-27 (Ex. B).) The only difference between the orders seems to be the amount of the money judgment.

county in which the property of the defendant is supposed to be, and shall require the sheriff to attach all the property of the defendant within the county or so much thereof as may be sufficient to satisfy the plaintiff's demand, together with costs and expenses"). Nor do the Lee Parties allege that they filed the order or otherwise recorded a lien with the Register of Deeds for Ozaukee County consistent with the order. (And a lien would give them only a security interest in the Property, not ownership of the Property.) The September 8, 2022 order in Case No. 2022-CV-162 was ineffective, on its own, to transfer any interest in the Property to the Lee Parties.

The state court separately entered an order on June 27, 2023 in Case No. 2023-CV-31. (Halloin Decl. Ex. 24, ECF 24-24.)[12] The order provides that the matter "relates to an execution against the [Property]." (*Id.* at 3.) The court ordered that "execution" in favor of the Lee Parties "is appropriate" and that "[t]itle to the Property is transferred to the [Lee Parties], effective immediately." (*Id.* at 4, ¶¶ 2, 5.) The order cites no legal authority for the execution and transfer of title to the Property, nor do the Lee Parties cite any authority in their briefing. The Court has assumed that the state court issued an order for execution for "delivery of property" under Wis. Stat. § 815.03. Once such an order is entered, the execution must follow the procedures required under chapter 815. Two requirements are pertinent here. First, "[w]hen the execution requires the delivery of real or personal

---

[12] The Lee Parties do not attach this order to their proposed amended complaint, but they do allege its existence, so the Court has considered the order included in the summary judgment record.

property, the execution shall be issued to the sheriff of the county where the property or some part of the property is situated." Wis. Stat. § 815.07. The Lee Parties do not allege that a writ of execution was issued to the sheriff. Second, "[l]evy of execution on real property is made by endorsing on the execution a description of the property on which the levy was made, and recording the execution, so endorsed, in the office of the register of deeds." Wis. Stat. § 815.195. The Lee Parties do not allege that the execution (or the order for execution) was recorded with the Ozaukee County Register of Deeds. Therefore, it appears that the Lee Parties did not, before the petition date, take the appropriate steps to perfect and levy the execution and transfer title to the Property.

The Lee Parties allege that the state court issued a writ of assistance to the sheriff, which is evidence that they, not the Debtors, own the Property. (Prop. Am. Compl., ECF 29-1, ¶ 40; *id.* at 39-42 (Ex. D).) The writ itself does not include the legal basis for issuance of the writ, and the Lee Parties do not explain the basis for issuance of the writ. (*See* ECF 22 at 11-12.) A writ of assistance puts the owner of property into possession of the property through assistance from the sheriff; the writ does not itself create the ownership interest. Jay E. Grenig, Wis. Pl. & Pr. Forms § 42:10 *Enforcement of Judgments: Writs of Assistance* (5th ed. June 2025 update) (citing *Stanley v. Sullivan*, 71 Wis. 585, 37 N.W. 801 (1888) (discussing nature of writ)).

Had the Debtors not filed bankruptcy, then perhaps the Lee Parties might have been put into possession of the Property with assistance from the sheriff

despite their failure to perfect the execution. But the writ of assistance was not served, and the Debtors remained in possession of the Property on the petition date. Without an allegation that the Lee Parties perfected their legal ownership interest in the Property (as opposed to having a lien on the Property), the Court cannot declare that they own the Property.

An observation before moving on: It is not clear why the Lee Parties need or want a declaration that they own the Property. The chapter 7 trustee filed a no-asset report and is not trying to liquidate the Property for the benefit of unsecured creditors. Once the main bankruptcy case is closed, which will happen as soon as this adversary proceeding is concluded, any interest the Debtors have in the Property will be abandoned from the bankruptcy estate. 11 U.S.C. § 554(c).[13]

The Lee Parties protest that the Debtors should not be allowed to use bankruptcy law "to create ownership rights which do not exist." (ECF 30 at 7.) They do not explain how the Debtors will obtain legal ownership of the Property merely by listing the Property on their bankruptcy schedules. If scheduled property of the debtor is not administered by the trustee during the bankruptcy case, any interest the debtor has in the property passes through the estate unaffected. *See* 11 U.S.C. § 554(c). If the Debtors had full legal ownership of the Property on the

---

[13] Another oddity: The Lee Parties assert, and the Debtors do not seem to dispute, that they now own the mortgage to C&K Associates and that the Debtors are behind on their mortgage payments. (ECF 43 at 10-11.) If all that is true, the Lee Parties could seek relief from the § 362(a) stay to institute proceedings to foreclose the mortgage. *See* 9B Am. Jur. 2d Bankruptcy § 1891 (Feb. 2026 update) ("There is no question that a property is not necessary to an effective reorganization where the debtor is not attempting to reorganize, but is voluntarily liquidating under Chapter 7 so that, where the debtor has no equity in the property, a relief from the automatic stay must be granted."). A debtor cannot claim a homestead exemption in a mortgage foreclosure. *See* Wis. Stat. § 815.20(1).

24

petition date, then that is what they will have upon abandonment from the estate; if they had a mere possessory interest on the petition date, then that is all they will have when this case is over.

## II.      Motions for Summary Judgment

Summary judgment is appropriate if the pleadings and affidavits on file show there is no genuine dispute as to any material fact and the moving party can establish it is entitled to judgment as a matter of law. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. An issue of material fact is a question that must be answered to determine the rights of the parties under substantive law and that can properly be resolved only "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The movant may meet his burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "If the movant has failed to make this initial showing, the court is obligated to deny the motion." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted). If the moving party meets his burden, the burden shifts to the nonmoving party to show there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

The Lee Parties seek a declaration that a debt owed to them is excepted from the Debtors' discharge under 11 U.S.C. § 523(a)(2)(A). That section excepts debts "obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11

25

U.S.C. § 523(a)(2)(A). The creditor must prove each element of a nondischargeability claim by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "[E]xceptions to discharge are to be [construed] strictly against a creditor and liberally in favor of the debtor." *Goldberg Securities, Inc. v. Scarlata (In re Scarlata)*, 979 F.2d 521, 524 (7th Cir. 1992).

The term "actual fraud" as used in § 523(a)(2)(A) "denotes any fraud that involves moral turpitude or intentional wrong." *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 360 (2016) (cleaned up); *see also In re McGill*, No. 22-21547-GMH, 2023 WL 7136151, at *6 (Bankr. E.D. Wis. Oct. 30, 2023) ("The essence of any claim under § 523(a)(2)(A) is that the debtor, whether by word or deed, somehow cheated the creditor, which requires some type of 'moral turpitude' or 'intent to deceive' on the part of the debtor, rather than simply not abiding by his promises.") (cleaned up). Thus, "actual fraud" includes debts incurred through "fraudulent conveyance schemes, even when those schemes do not involve a false representation." *Husky*, 578 U.S. at 366. "[T]he recipient of the transfer—who, with the requisite intent, also commits fraud—can obtain assets by his or her participation in the fraud. If that recipient later files for bankruptcy, any debts traceable to the fraudulent conveyance will be nondischargeable under § 523(a)(2)(A)." *Id.* at 365 (cleaned up).

A bankruptcy debtor can be liable as a transferee of fraudulently conveyed property where the debtor participated in a scheme to hide an asset from the creditor. *See McClellan v. Cantrell*, 217 F.3d 890, 895 (7th Cir. 2000). In *McClellan*, the creditor sold his ice-making machinery to the debtor's brother for

$200,000, payable to the creditor in installments.  *Id.* at 892.  The brother defaulted, and the creditor commenced litigation to seek return of the machinery and collection of the remaining balance of the debt.  *Id.*  The debtor's brother "sold" the machinery to the debtor for $10.  *Id.*  The debtor then sold the machinery for $160,000 and refused to disclose where the sale proceeds went.  *Id.*  The Seventh Circuit held that the debtor's liability for fraudulent conveyance could be rendered nondischargeable if the debtor participated in the fraud and had intent to assist her brother in transferring assets to evade the creditor.  *Id.* at 893-94.  The court noted that a transfer that is merely constructively fraudulent, where the debtor did not have knowledge of or intent to participate in a fraudulent scheme to hinder the creditor, may be dischargeable.  *Id.* at 894 ("The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones[.]").

The record includes some evidence of the Debtors' intent, but there are genuine issues of material fact precluding summary judgment.

**A.      The State Court Order Does Not Establish Intent to Defraud.**

To prevail on their nondischargeability claim, the Lee Parties must prove that the Debtors are liable for an actual fraudulent transfer, as opposed to a constructive fraudulent transfer.  The Lee Parties rely heavily on the September 8, 2022 order entered in Ozaukee County Case No. 2022-CV-162.  (Halloin Decl. Ex. 8, ECF 24-8.)  They say, for example, that "[t]he Wisconsin Circuit Court already entered a final order that [the Debtors] were liable for the damages caused by Kay

Yang's fraud." (Pls' Combined Reply Brief, ECF 43, at 18). The order cannot bear the weight the Lee Parties place on it.

In the September 8 order, the state court stated that "[t]his matter relates to fraudulent transfers from Defendant debtor Kay Yang to the other named Defendants in this action." (Halloin Decl. Ex. 8, ECF 26-8, at 2.) The court found the Debtors to be in default and concluded that "[t]he allegations of the Complaint are deemed admitted." (*Id.* at 4.) The court then entered judgment against the Debtors in the amount of $2,374,290.16. (*Id.*) The Court's order does not specifically state the basis of the Debtors' liability, other than a reference to fraudulent transfers.

Even assuming we can look to the Lee Parties' state court complaint to determine the source of the Debtors' liability, that does not help the Lee Parties. As relevant here, the Lee Parties alleged: "Plaintiffs believe that these transfers [to Debtors for purchase of the Property] were done with an intent to hinder, delay or defraud the Plaintiffs' efforts to collect a present or future judgment against Ms. Yang." (Halloin Decl. Ex. 6, ECF 24-6, ¶ 23.) They also allege that, "Plaintiffs believe each of the above transfers to be a violation of Wisconsin Statutes Chapter 242." (*Id.* ¶ 25.) The Lee Parties "request[ed] judgment under Wisconsin Statutes sections 242.04 and 242.07." (*Id.* at 11.) The September 8 order provides that these allegations were deemed admitted by the Debtors. The most that the Debtors admitted was that the Lee Parties *believe* the transfer to them was done with intent

28

to hinder, delay or defraud the Lee Parties; the Debtors did not admit the existence of any intent to hinder, delay or defraud.

Moreover, the complaint alleged that the transfer was a violation of chapter 242 of the Wisconsin Statutes and requested relief under section 242.04. That section includes two distinct causes of action: section 242.04(1)(a) relates to actual fraudulent transfers as to present or future creditors, and section 242.04(1)(b) relates to constructive fraudulent transfers as to present or future creditors. Wis. Stat. § 242.04(1). The Lee Parties did not include a specific request for relief under either subsection, and the state court did not grant relief under either subsection. So the Debtors' liability for fraudulent transfer under the September 8 order could be based on constructive fraudulent transfer or actual fraudulent transfer. If the former, their debt to the Lee Parties is dischargeable under *McClellan*. 217 F.3d at 894 ("The fraud exception to the dischargeability of debts in bankruptcy does not reach constructive frauds, only actual ones[.]"). The Lee Parties cannot rely solely on the state court order to establish fraudulent intent. They must prove here that the transfer was an actual fraudulent transfer.

### B. There Are Material Factual Disputes Regarding Intent.

The key element of a nondischargeability claim for actual fraud is the scienter requirement: the plaintiff must prove fraudulent intent. *See Husky*, 578 U.S. at 360 ("[A]nything that counts as 'fraud' and is done with wrongful intent is "actual fraud."). Wrongful intent can be, but rarely is, proven with direct evidence. Intent can also be proven through circumstantial evidence. State statutes usually include a list of "badges of fraud" that can be helpful in determining whether a

29

fraudulent transfer is actually fraudulent, as opposed to constructively fraudulent, and federal courts considering whether intent is proven for purposes of a claim under § 523(a)(2)(A) often look to these badges of fraud. *See, e.g.*, *In re Wigley*, 15 F.4th 1208, 1212 n.4 (8th Cir. 2021) ("We reject Barbara's argument that the bankruptcy court erred in considering the badges of fraud set forth in Minn. Stat. § 513.44(b)."); *In re Kedia*, 607 B.R. 101, 110 (Bankr. E.D.N.Y. 2019) ("Actual fraud can be shown by the presence of multiple 'badges of fraud[.]'") (internal quotation marks omitted).

As with the intent element in other causes of action, intent under § 523(a)(2)(A) is a question of fact rarely appropriate for disposition on summary judgment. *See, e.g.*, *Staren v. Am. Nat. Bank & Tr. Co. of Chicago*, 529 F.2d 1257, 1261 (7th Cir. 1976) ("[Q]uestions of motivation or intent are particularly inappropriate for summary judgment."); *In re Salgado*, 588 B.R. 209, 214 (Bankr. N.D. Ill. 2018) ("Summary judgment will almost never be available when fraudulent intent is a part of the cause of action. This is because intent is a factual issue that is ordinarily a subjective inquiry, making the Debtor's testimony and credibility germane to this determination."). Summary judgment in favor of the creditor is appropriate only in "exceptional" cases where a debtor's denial of knowledge is "utterly implausible in light of conceded or irrefutable evidence that no rational person could believe it." *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998). This is not one of those exceptional cases.

Before moving on to the evidence on intent, the Court pauses to note an issue of law that was not well-briefed by the parties, which is **_whose_** intent is relevant when determining whether a debt for an actual fraudulent transfer is nondischargeable under § 523(a)(2)(A).  The Supreme Court in *Husky* and the Seventh Circuit in *McClellan* held that a debt based on a fraudulent transfer can be declared nondischargeable if the debtor as transferee had knowledge of and intent to participate in the fraudulent transfer.  *Husky*, 578 U.S. at 365 (noting that a transferor does not "obtain" debts by fraudulent conveyance, but that "the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtain' assets 'by' his or her participation in the fraud") (emphasis added); *McClellan*, 217 F.3d at 894 ("[I]f though the debtor's brother intended to thwart McClellan and was thus committing actual fraud, his sister was innocent—if she had no intention of hindering any creditor—the debt that McClellan is seeking to collect from her would not have been obtained *by her* by actual fraud.").  A more recent Supreme Court case holds that a debt can be nondischargeable even where the debtor herself did not have fraudulent intent, but that case did not involve a fraudulent transfer.  *See Bartenwerfer v. Buckley*, 598 U.S. 69 (2023).

In *Bartenwerfer*, a husband and wife remodeled and sold a house as business partners.  598 U.S. at 72.  The husband did most of the work during the process, and the wife was largely uninvolved.  *Id.*  After the sale, the buyer discovered several undisclosed defects.  *Id.*  The buyer sued the couple in state court, alleging

31

various claims for breach of contract, negligence, and nondisclosure, and the court entered judgment against both of them. *Id.* at 72-73.

The couple filed bankruptcy, and the buyer sought to have the judgment debt declared nondischargeable under 11 U.S.C. § 523(a)(2)(A). *Id.* at 73. At issue in the case was whether § 523(a)(2)(A) excepts from discharge only debts for fraud committed by the debtor herself, as the wife argued, or whether the statute also excepts debts for money obtained by fraud, even if the debtor was not the fraudster, as argued by the buyer. The Supreme Court agreed with the buyer. *Id.* at 74-79. The Court held that, "[w]ritten in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Id.* at 72. Because the money owed to the buyer was obtained by fraud (*i.e.*, the husband's fraud), the debt owed by the wife was nondischargeable under § 523(a)(2)(A) because she was liable for the same debt under state law. *Id.*

The Lee Parties point to *Bartenwerfer* in support of an argument that they need not prove the Debtors' intent, and that it is sufficient for them to prove Kay Yang's intent to defraud the Lee Parties. (*See* Pls' Combined Reply Brief, ECF 43, at 18 ("[B]ecause the judgment [in Case No. 2022-CV-162] arises from funds obtained by Kay Yang's fraud and then passed to/used by [the Debtors], it is a debt for money obtained by fraud.").) But the Lee Parties do not allege that the Debtors are liable for Kay Yang's initial fraud. Rather, the Lee Parties allege that the Debtors are liable for a debt for money obtained through a fraudulent transfer under chapter 242 of the Wisconsin Statutes, an entirely separate, statutory cause

of action distinct from Yang's debt to the Lee Parties for fraud.[14]  (*See* Halloin Decl. Ex. 8, ECF 24-8.)

The focus, then, is on the allegedly fraudulent transfer to the Debtors, not on Yang's underlying fraud in causing the Lee Parties to part with their money initially.  In *Husky*, the Supreme Court emphasized that the basis for the transferor's underlying debt to the creditor is not relevant to nondischargeability based on a fraudulent transfer.  578 U.S. at 365 (rejecting dissent's view that a claim under § 523(a)(2)(A) must "result from fraud ***at the inception of a credit transaction***") (emphasis added); *see also McClellan*, 217 F.3d at 894 ("[T]he law of fraudulent conveyance is merely a method of facilitating the collection of a previous debt that ***need not itself have been created by a fraud***.") (emphasis added). Thus *Bartenwerfer* does not help the Lee Parties in the way they think, because proof of Yang's intent to defraud the Lee Parties by causing them to part with their money between January and May 2019 is different from her intent to hinder, delay or defraud her creditors when she transferred money to the Debtors to purchase the Property in July 2019.

There is an outstanding question as to whether Kay Yang's intent is relevant to the dischargeability of the Debtors' liability for an actual fraudulent transfer, or whether only the Debtors' intent matters.  The majority opinion in *Bartenwerfer*

---

[14] Wisconsin's fraudulent transfer law in chapter 242 is a creditor-protection statute.  *Badger State Bank v. Taylor*, 2004 WI 128, ¶ 41, 276 Wis. 2d 312, 330, 688 N.W.2d 439, 448.  It provides remedies to creditors so they are not deprived of assets that would otherwise be available to satisfy debts when the debtor becomes insolvent or is about to become insolvent.  *Id.* ¶ 42.

suggests that it may not.  598 U.S. at 72 ("Written in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it.").  The concurrence suggests that liability may be limited to debtors who have a partnership or agency relationship with the person who committed the fraud.  *Id.* at 84 (Sotomayor, J., concurring) ("The Court here does not confront a situation involving fraud by a person bearing no agency or partnership relationship to the debtor.").  At least one court has held that *Bartenwerfer* does not extend to innocent transferees of fraudulent transfers even if the transferor had fraudulent intent.  *See In re Vulaj*, 651 B.R. 310, 315 (Bankr. S.D. Cal. 2023).  The Lee Parties' discussion of *Bartenwerfer* does not address the issue of the innocent transferee[15] (their discussion focuses on their incorrect argument that the Debtors are liable for Yang's underlying fraud), and the Debtors had no opportunity to discuss *Bartenwerfer*'s applicability here because the Lee Parties did not cite the case until their reply brief.

The Court need not decide the issue at this juncture because the summary judgment record does not include sufficient facts for the Court to conclude that this could be a case of a fraudster transferor and innocent transferee.  The Lee Parties

---

[15] A hypothetical with less complex facts than this case highlights the issue.  Suppose P (the primary debtor) owes a debt to C (the creditor) for $100,000.  In an attempt to shield assets from C, P transfers $10,000 to D (the debtor) in the form of a gift and without consideration.  D is unaware of C's claim against P or that the $10,000 could have or should have been used to pay C.  D is nevertheless liable as a transferee under Wis. Stat. § 242.04(1)(a) because she received an actual fraudulent transfer, and a state court enters judgment in favor of C and against D under Wis. Stat. § 242.08(2).  D already spent the money she received from P and does not have $10,000 to pay the judgment.  D files bankruptcy.  Is D's debt to C nondischargeable under § 523(a)(2)(A) if C can prove that D obtained the $10,000 through P's actual fraudulent transfer, even if D lacked any intent to defraud C?  That question may not necessarily be answered by *Bartenwerfer*.

make no argument and present no facts that Yang (or A&K Equity or C&K Associates) had an intent to hinder, delay, or defraud her creditors when she transferred funds to the Debtors to purchase the Property.

The innocent transferee legal issue may not matter if the Lee Parties can present sufficient evidence to prove that the Debtors had an intent to defraud. But the Lee Parties' briefs are high on rhetoric and short on facts in this regard. The Lee Parties rely primarily on the circumstances and terms of the mortgage loan the Debtors received from C&K Associates. (ECF 22 at 15.) *First*, the Lee Parties assert that the Debtors did not fill out a loan application or go through any sort of credit check or underwriting process. This fact is not undisputed; the Debtors deny that they did not fill out "traditional loan documents." (Defs' Resp. to Pls' PFOF, ECF 38, ¶ 65.) *Second*, the Debtors provided only the $1,000 escrow payment to purchase the Property, and C&K Associates did not require them to tender a further down payment for the mortgage loan, which is unusual for a typical mortgage loan transaction. (*See* Halloin Decl. Ex. 17, ECF 24-17.) *Third*, the loan had a 2% interest rate, which was well below the market rate at the time. (Defs' Resp. to Pls' PFOF, ECF 38, ¶¶ 63-64.) *Fourth*, the Debtors made irregular payments and eventually stopped making payments yet no foreclosure action or other collection action was initiated against them. The Debtors dispute that this gave them knowledge of Yang's fraud; they say they made payments as directed by

Yang.  (Defs' Resp. to Pls' PFOF, ECF 38, ¶¶ 73-76.)[16]  *Fifth*, the Lee Parties say that "[t]he financer of the purchase was not a licensed or registered vendor," citing facts related to A&K Equity, not C&K Associates.  (Pls' Mot. for Summ. J., ECF 22, at 15.)  Presumably, the Lee Parties rely on the transfer of funds from the A&K Equity account at Capital One to the C&K Associates account.  (*See* Halloin Decl. Ex. 15, ECF 24-15.)  The Debtors say they don't know anything about that.  (Defs' Resp. to Pls' PFOF, ECF 38, ¶¶ 56, 60.)

For their part, the Debtors say that they were not investors in Yang's fraudulent investment scheme.  They say they were made aware that Yang was operating C&K Associates and could provide a mortgage loan, "regardless of familial relations."  They did not know how Yang and C&K Associates operated the business, and they believed the mortgage loan was legitimate.  (Witkowski Decl. Exs. 3 & 4, ECF 32-3, -4.)

Whether the Debtors acted with fraudulent intent sufficient to prevent discharge under § 523(a)(2)(A) is a question of fact.  The Lee Parties identified some badges of fraud, but not all are undisputed.  While those facts could ultimately support a finding of intent, they do not *necessarily* lead to a finding of intent.  The Debtors presented their own affidavits essentially averring that they were good

---

[16] This fact may not support a finding of fraudulent intent because the events happened after the Debtors received the allegedly fraudulent transfer from Yang's company.  To be nondischargeable under § 523(a)(2)(A), the money must have been "obtained by" fraud, meaning that relevant intent is at the time of the transfer.  *In re Neumann*, 13 B.R. 128, 130 (Bankr. E.D. Wis. 1981) ("In order to prevail under s. 523(a)(2)(A) the plaintiff must show that the [statute's] elements [including "an intent to deceive"] existed at the time that the property/money was obtained[.]").  Facts that could have or should have alerted the Debtors to Yang's fraud that occurred after the Debtors already received the money may not bear on their intent in receiving the money months or years earlier.

faith recipients of the funds.  The statements in the Debtors' affidavits that they lacked knowledge of Yang's fraudulent transfer scheme and intent to participate are not "utterly implausible."  The Court cannot conclude that there are no undisputed issues of material fact such that summary judgment is appropriate for either party with respect to the Debtors' intent.

Finally, there are unresolved questions of fact regarding the amount of the debt that may be declared nondischargeable.  The Court can declare a debt nondischargeable only "**to the extent** [the money was] obtained by . . . false pretenses, a false representation, or actual fraud[.]"  11 U.S.C. § 523(a)(2)(A) (emphasis added).  This means that "[n]ondischargeability therefore is limited to that portion of the debt directly attributable to fraudulent acts."  *In re Christensen*, No. 04 A 3646, 2005 WL 1941231, at *5 (Bankr. N.D. Ill. Aug. 12, 2005); *see also Ojeda v. Goldberg*, 599 F.3d 712, 720 (7th Cir. 2010) ("Because the statute provides that an extension is non-dischargeable 'to the extent' that it is obtained by a false representation, the question for us is what portion of the forbearance is directly attributable to the false representation.") (citing *Christensen* with approval); *In re Poulos*, 636 B.R. 535, 541 (Bankr. N.D. Ill. 2022) ("[I]f the debtor misapplies only a portion of a loan, the amount of the loan not used in the required manner is nondischargeable.")

The Debtors received only $250,000 from the Capital One account into which the Lee Parties deposited funds to be invested by Yang, and only $261,871.17 from Yang through C&K Associates.  The Court need not declare the *entire* debt (i.e., the

$2,374,290.16 in the state court's September 8, 2022 order) to be nondischargeable if such a declaration is not supported by the evidence.[17]

## CONCLUSION

The Lee Parties' motion for leave to amend the adversary complaint is prejudicially late and futile. With respect to the Lee Parties' nondischargeability claim under 11 U.S.C. § 523(a)(2)(A), there are disputed questions of fact as to the intent element and the amount of money allegedly obtained by fraud.

Accordingly, IT IS HEREBY ORDERED:

1. The Lee Parties' motion for leave to amend the complaint (ECF 29) is DENIED.

2. The motions for summary judgment filed by the Lee Parties (ECF 21) and the Debtors (ECF 26) are DENIED.

Dated: March 31, 2026

Rachel M. Blise
U.S. Bankruptcy Judge

---

[17] The Lee Parties cannot rely solely on the state court's determination that the Debtors' liability is joint and several with the other transferees identified in the complaint in Case No. 2022-CV-162. It is unclear why the Debtors, as transferees, would have liability under Wisconsin law for funds received by *other* transferees. The state court's determination on joint and several liability may be preclusive under a doctrine such as claim preclusion, issue preclusion, the *Rooker-Feldman* doctrine, or another legal theory. However, even if the Debtors are liable outside of bankruptcy for the entire amount, only the amount that was "obtained by" fraud can be declared to be nondischargeable.